UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

LORENZO E. WALKER,

      Petitioner,

v.                                         Case No.  4:15cv234/MW/CJK

JULIE L. JONES,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. 1).  Respondent filed an answer, submitting relevant portions of the state court record.  (Doc. 12).  Petitioner replied.  (Doc. 16).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  The undersigned further concludes that the pleadings and attachments before the court show that petitioner is not entitled to habeas relief, and that the petition should be denied.

BACKGROUND AND PROCEDURAL HISTORY[1]

On August 6, 2009, petitioner was charged with robbery, a second-degree felony, in Leon County Circuit Court Case No. 09-CF-2275.  (Doc. 12, Ex. A, p. 6).[2] The factual basis for the charge as described in the amended information is as follows:

> On July 10, 2009, [Lorenzo E. Walker] did unlawfully take U.S. Currency or other property from the person or custody of Nader N. Kasem, with intent to either permanently or temporarily deprive the person or the owner of the money or property, and during the course of the taking, Nader N. Kasem was or became aware of the taking, and in the course of the taking, Lorenzo Walker used force, violence, assault, or putting in fear, and the defendant has 2 prior theft convictions, 199[1]CF3832 and 1992MM7[8]84, contrary to Sections 812.13(2)(c) and 812.131(2)(b), Florida Statutes.

(Ex. A, p. 7).  The State filed a notice of intent to seek enhanced sentencing under Florida's Prison Releasee Reoffender (PRR) statute, section 775.082(9), Florida Statutes.  (Ex. A, p. 13).  Petitioner's sentence exposure for a robbery conviction with a PRR adjudication was a mandatory term of 15 years in prison served "100 percent", or day for day.  *See* Fla. Stat. § 775.082(9)(a)-(b).  Petitioner would not be

---

[1]The facts contained within this section are provided to give context to petitioner's eleven claims. The facts are either undisputed, conclusively established by the record, or considered reasonable factual determinations made by the state courts after an evidentiary hearing.

[2]References to exhibits are to those provided at Doc. 12.  Reference to a particular page of an exhibit is to the page number appearing at the bottom of the page.

subject to PRR sentencing if he were convicted of the lesser offense of theft. *See* Fla. Stat. § 775.082(9)(a) (list of offenses subject to PRR sentencing).

The arresting officer's report (Officer Osborn) described the circumstances of the robbery as follows:

> On the listed date Walker entered the Time Saver located at 1104 Old Bainbridge Rd. Walker obtained a can of beer from the cooler and waited in line for the cashier. Walker placed the beer and money on the counter. Victim Nader Kasem was operating the cash register and picked up the money and opened the register to complete the transaction. Walker then suddenly lunged across the counter and snatched $31.00 US Currency from the cash register. Victim Kasem immediately grabbed for the money and the two struggled over the currency very briefly. Victim Kasem was able to get the money back from Walker. Walker then attempted to flee the store with Victim Kasem hanging onto his back and witness Sari Jaber attempting to detain him as well. Walker was able to break free and fled on foot westbound.
>
> Upon my arrival I observed Walker turn to walk southbound on Dewey St. Witness Foqahaa pointed to Walker and advised that he was the suspect. I made contact with Walker on Preston St. near Dewey St. and placed him under arrest. I immediately noticed that Walker's shirt was torn on the front and sleeve, consistent with him having been involved in a struggle. I read Walker his Miranda from a printed card. Post Miranda Walker claimed he had been involved in a verbal dispute with an unknown black male nearby and the male had "jumped on" him.
>
> A show-up was conducted and Walker was positively identified as the male who had taken the currency by force. I transported Walker back to the incident location. I then reviewed the video surveillance from the store, which corroborated the above described incident.
>
> Walker was transported to LCJ Ofc. Tterlikkis #567.

As of this time a copy of the video surveillance was not available. Management will make efforts to provide a copy of this incident, which will be impounded per TPD policy.

(Ex. A, p. 9).  Prior to trial, defense counsel Attorney Been deposed Officer Osborn, Mr. Kasem and Mr. Al-Foqahaa.  (Ex. I, p. 296).

The State offered petitioner the opportunity to plead guilty to attempted robbery (a third-degree felony) and be sentenced as a PRR to a mandatory minimum term of 5 years in prison.  (Ex. I, p. 301).  Defense counsel presented the plea offer to petitioner, but petitioner declined, stating he did not want to serve more than 3 years.  Defense counsel counter-offered 3 years, but the prosecutor rejected it.  (Ex. I, pp. 301-302).  The defense later offered 5 years no PRR, but the State rejected that offer as well.  (Ex. I, p. 302).  At the postconviction evidentiary hearing, petitioner testified that he would have taken 5 years, "but not for a robbery".  (Ex. I, p. 250).

To obtain a conviction for robbery, the State had to prove four elements:  (1) petitioner took U.S. currency from the person or custody of Mr. Kasem; (2) petitioner used force, violence, assault, or putting in fear in the course of the taking; (3) the property taken was of some value; and (4) the taking was with the intent to permanently or temporarily deprive Mr. Kasem of his right to the property.  *See* Fla. Stat. § 812.13(2)(c); *see also* Ex. A, pp. 25-26 (jury instructions).  Given the

strength of the State's case on the first, third and fourth elements, Attorney Been's defense strategy was to try to avoid a PRR sentence by admitting that petitioner took the money and was guilty of theft, but contending that the State's evidence was insufficient to prove that petitioner was guilty of robbery because petitioner did not use force or violence or put anyone in fear (or at least there was reasonable doubt whether the State proved the second element). (Ex. B, p. 5 (petitioner's pre-trial acknowledgement of the defense strategy); Ex. B, pp. 28-29 (trial counsel's opening statements outlining the defense); Ex. I, pp. 255, 284, 297, 300-01 (petitioner's and trial counsel's postconviction evidentiary hearing testimony describing the defense theory that petitioner committed nothing more than a theft – a lesser included offense which was not subject to PRR sentencing)). Toward that end, Attorney Been attempted to discredit Mr. Kasem's and Mr. Al-Foqahaa's recollection of the event, and presented petitioner's testimony describing the incident as a non-violent, non-threatening theft ending in petitioner's return of the money.

Attorney Been believed the surveillance video referenced in Officer Osborn's arrest report was "exculpatory", or helpful to petitioner's defense, because according to Officer Osborn's pre-trial deposition testimony, the video showed petitioner lunging at the cash register and taking the money out of the cash drawer,

but did not show him using force or violence or placing the victim in fear in the course of the taking.  As Osborn described the video, petitioner had no physical contact with anyone prior to his lunging for the cash register.  After petitioner grabbed the money, the cashier (Mr. Kasem) immediately grabbed petitioner's arm and the money in petitioner's hand and, when petitioner attempted to flee, grabbed petitioner from behind and hung onto his back with the assistance of a co-worker (Mr. Jaber).  In other words, the only struggle that occurred was after petitioner abandoned the money and was attempting to flee.  (Ex. I, pp. 284, 297 (trial counsel's postconviction evidentiary hearing testimony); *see also* Ex. B, pp. 99-102 (Office Osborn's trial testimony relating his deposition testimony)).  The surveillance video was unavailable at the time of trial because it had not been preserved.  (Ex. B, p. 74-75, 81; Ex. I, pp. 283, 296-297).  Officer Osborn failed to promptly retrieve the video from the store, and the footage of the robbery was taped over with new footage.  (Ex. B, pp. 74-75, 96-97; Ex. I, p. 296).  Attorney Been contacted the store in an effort to retrieve the video footage, but was told it no longer existed.  (Ex. I, p. 297).

Attorney Been advised petitioner to testify at trial as to his version of the story, because counsel did not want Mr. Kasem's version to be the only one the jury heard.  (Ex. I, p. 298).  Defense counsel prepared petitioner for cross-examination

and informed him that the prosecutor would ask him about his prior felony convictions and misdemeanor convictions for crimes involving dishonesty.  (Ex. I, pp. 285, 298).  The defense did not want the nature of one prior felony conviction in particular to be revealed, because it was a conviction for sexual battery.  (Ex. I, p. 271).  Defense counsel advised petitioner that if he agreed with the State's number – that he had 5 prior felony convictions and 9 prior misdemeanor convictions for crimes of dishonesty – the State could not admit proof of his prior convictions or get into any specifics of the underlying crimes.  (Ex. I, pp. 285, 302-303).

Petitioner went to trial on September 8, 2010, and was found guilty of robbery as charged.  (Ex. B (trial transcript); Ex. A, pp. 23-24 (verdict)).  Petitioner was adjudicated a prison release reoffender and sentenced to 15 years in prison with a 15-year mandatory minimum.  (Ex. A, pp. 35-44).  On October 14, 2011, the Florida First District Court of Appeal (First DCA) affirmed the judgment per curiam and without a written opinion.  *Walker v. State*, 71 So. 3d 754 (Fla. 1st DCA 2011) (Table) (copy at Ex. G).

On January 25, 2012, petitioner filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850.  (Ex. H, pp. 1-16).  The court appointed counsel (Ex. H, p. 23), held an evidentiary hearing on October 1, 2013,

(Ex. I, pp. 237-331), and denied relief by written order with record attachments.  (Ex. H, pp. 29-39 (order)).  The First DCA summarily affirmed, with the mandate issuing February 10, 2015.  *Walker v. State*, 156 So. 3d 1085 (Fla. 1st DCA 2015) (Table) (copy at Ex. L).

Petitioner filed his federal habeas petition on April 21, 2015.  (Doc. 1).  The petition raises eleven grounds for relief.  Respondent asserts that each claim fails because the state court's rejection of the claim was neither contrary to, nor an unreasonable application of, clearly established federal law, and did not involve an unreasonable determination of the facts.  (Doc. 12).

RELEVANT LEGAL PRINCIPLES

Section 2254 Standard or Review

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3] The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme

---

[3]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *Thaler v. Haynes*, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); *Woods v. Donald*, — U.S. —, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) ("We have explained that clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). Where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly

established federal law.  *See Woods*, 135 S. Ct. at 1377 (holding, as to claim that counsel was *per se* ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants:  "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)).  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.  *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam).  In applying this standard, the Supreme Court has emphasized:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong.  Federal habeas review thus exists as "a guard against

> extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington, supra*, at 102-103, 131 S. Ct. 770 (internal quotation marks omitted).

*Woods*, 135 S. Ct. at 1376 (*quoting Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). Federal courts "may not characterize . . . state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance." *Brumfield v. Cain*, — U.S. —, 135 S. Ct. 2269, 2277, 192 L. Ed. 2d 356 (2015) (quotation marks omitted).

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct.  28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").  Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and § 2254(e)(1) interact in the context of fact-based challenges to state court adjudications.  *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d 739 (11th Cir. 2011).  However, the Eleventh Circuit declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision."  *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See Panetti*, 551 U.S. at 954.  Even then, the

writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).  "If this standard is difficult to meet, that is because it was meant to be."  *Richter*, 562 U.S. at 102.

Clearly Established Federal Law Governing Claims of Ineffective Assistance of Counsel

All of petitioner's claims are grounded in his assertion that trial counsel was ineffective.  In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set out a two-part inquiry for ineffective assistance of counsel claims.  The petitioner must show that (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him.  466 U.S. at 687.  "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.  Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986) (*quoting Strickland*, 466 U.S. at 694).

Trial "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.  "To overcome that presumption, a defendant must show

that counsel failed to act reasonably considering all the circumstances." *Cullen v. Pinholster*, 563 U.S. 170, 189, 131 S. Ct. 1388, 179 L. Ed. 2d 557 (2011) (quotation marks and alterations omitted).  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.  "[T]he absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance."  *Burt v. Titlow*, 571 U.S. —, 134 S. Ct. 10, 17, 187 L. Ed. 2d 348 (2013) (quotation marks and alterations omitted).

With regard to prejudice, the *Strickland* court emphasized that a defendant must show a "reasonable probability" of a different result.  A reasonable probability is one that sufficiently undermines confidence in the outcome.  *Strickland*, 466 U.S. at 694.   "The likelihood of a different result must be substantial, not just conceivable."  *Richter*, 562 U.S. at 112.  Where, as here, a petitioner rejects a plea offer, he must establish "that there is a reasonable probability that [he] would have accepted that offer but for counsel's deficient performance, and that the plea would have resulted in a lesser charge or a lower sentence."  *Gissendaner v. Seaboldt*, 735

F.3d 1311, 1317 (11th Cir. 2013) (*citing Missouri v. Frye*, 566 U.S. 133, 147, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012)).

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105. As the Court in *Richter* explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id*. (citations omitted).

### DISCUSSION

**Ground One**      "Defense counsel rendered ineffective assistance by failing to
               object to evidence of a surveillance video on confrontation
               grounds".  (Doc. 1, p. 27).

**Ground Two**      "Defense counsel rendered ineffective assistance by misleading
               Walker to believe that there would be no mention of the
               surveillance video during trial, which led Walker to refuse the
               State's plea offer and proceed to trial".  (Doc. 1, p. 29).

Petitioner claims in Ground One that trial counsel was ineffective for failing
to object on confrontation grounds to testimony by Officer Osborn and Mr. Kasem
describing what they saw on the surveillance video from the store.  Petitioner argues
that the testimony was highly prejudicial because it identified petitioner as the robber
and described him as lunging at the cash register.  (Doc. 1, pp. 27-28).  Petitioner
asserts that had counsel objected, there would have been no mention of the video
and he would not have testified at trial and admitted to taking the money.  (*Id*., p.
27).  Petitioner further asserts that had he known prior to trial that evidence of the
video was coming in, he would have accepted the State's 5-year plea offer.  (*Id*., p.
28).  Petitioner claims in Ground Two that prior to trial, defense counsel told him
there would be no mention of the surveillance video during trial since it had been
destroyed, and that this advice led petitioner to refuse the State's 5-year plea offer
and proceed to trial.  (*Id*., pp. 29-30).  Respondent asserts that the state court's
rejection of these claims is consistent with *Strickland*.  (Doc. 12, pp. 3-5).

Petitioner raised these claims as Grounds I and II of his Rule 3.850 motion. (Ex. H, pp. 3-5).  The state circuit court identified the governing legal standard as the *Strickland* standard.  (Ex. H, pp. 29-30).   The circuit court considered the evidence adduced at the postconviction evidentiary hearing, which consisted of petitioner's testimony and defense counsel's testimony (Attorney Been).  The circuit court credited Attorney Been's testimony over petitioner's testimony where they conflicted.  (Ex. H, pp. 32-35).  In describing the background of the case, the circuit court found:

> Mr. Been testified that the trial strategy was to argue the lesser included offense of felony theft to avoid a PRR sentence.  Mr. Been testified that the Defendant understood and agreed with this trial strategy.  *Exhibit 2, p. 5*.  The Defendant admitted at trial and at the hearing that he grabbed the money.

(Ex. H, p. 31).  The court denied relief on Grounds I and II, explaining:

**Ground I and II**

> The Defendant alleges counsel was ineffective for failing to object to any mention of the store's surveillance video that was taped over and not available at trial.  The Defendant alleges that counsel's ineffectiveness denied him his right to confrontation and due process. The Defendant testified that Mr. Been told him that there would be no surveillance video at trial because it had been destroyed.   The Defendant alleges that it led him to take the stand in his own defense and admit to a lesser crime of theft.

> Mr. Been testified that he believed Officer Osborn's testimony regarding his review of the video would be exculpatory for the defendant and that it would further the defense theory of felony theft

instead of robbery.  Other than the Defendant's testimony, Officer Osborn's testimony regarding what he saw on the video was the <u>only</u> testimony that arguably corroborated the Defendant's story.  Following the Defendant's logic, had testimony of the video been suppressed and the Defendant remained silent at trial, the <u>only</u> evidence the jury would have considered was Kasem's testimony which clearly established the elements of the robbery.  Mr. Been's question about the video was a reasonable strategy and does not rise to deficient performance of counsel.  Even if it did, the Defendant has failed to establish that he suffered any prejudice.  The Defendant testified that he would have taken the 5 year plea, but not for robbery.  This Court finds that the Defendant was not going to accept a PRR sentence, which the State was requiring.  Ground I and Ground II are DENIED.

(Ex. H, p. 32).  The First DCA summarily affirmed.  (Ex. L).

The relevant decision for purposes of 28 U.S.C. § 2254 is the First DCA's summary affirmance, which is the final state court adjudication on the merits of petitioner's claims.  *Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."); *Wilson v. Warden, Ga. Diagnostic Prison*, 834 F.3d 1227, 1235 (11th Cir. 2016) (defining the relevant decision for purposes of § 2254 review as the state appellate court's summary affirmance of the lower tribunal's decision), *petition for cert. filed*, No. 16-6855 (U.S. Nov. 15, 2016).  Where, as here, "the last adjudication on the merits provides no reasoned opinion, federal courts review that decision using the test announced in

*Richter*." *Wilson*, 834 F.3d at 1235.  The *Richter* test provides that "[w]here a state court's decision is unaccompanied by an explanation," a petitioner's burden under section 2254(d) is to "show[ ] there was no reasonable basis for the state court to deny relief." *Richter,* 562 U.S. at 98.  "[A] habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the] Court." *Id.* at 102.

Under the *Richter* test, petitioner must establish there was no reasonable basis for the First DCA to affirm the denial of Grounds I and II.  In reviewing the reasonableness of the First DCA's decision, this court may, but is not required to, look to the reasoning of the state court below (the state circuit court).  The Eleventh Circuit explained in *Wilson*:

> When the reasoning of the state trial court was reasonable, there is necessarily at least one reasonable basis on which the state [appellate] court could have denied relief and our inquiry ends.  In this way, federal courts can use previous opinions as evidence that the relevant state court decision under review is reasonable.  But the relevant state court decision for federal habeas review remains the last adjudication on the merits, and federal courts are not limited to assessing the reasoning of the lower court.

834 F.3d at 1239.

The First DCA reasonably could have accepted the postconviction trial court's credibility determinations – its crediting Attorney Been's testimony in instances where it conflicted with petitioner's testimony.  (*See* Ex. I, p. 266 (postconviction court's comment that petitioner "was being evasive" during his evidentiary hearing testimony); Ex. H, p. 34 (postconviction court's written order finding petitioner "obstructionist" and "not credible")); *see also Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) ("Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review.").  The First DCA also reasonably could have accepted the postconviction trial court's other factual determinations, most significantly, its findings that Attorney Been's choice of defense strategy was tactical, that Been's decision to use the surveillance video as part of the defense was a strategic decision made after reasonable investigation and with petitioner's understanding and consent, and that petitioner's decision to reject the State's plea offer was not influenced by advice that evidence of the video would not come in.  *See Hardwick v. Crosby*, 320 F.3d 1127, 1163 (11th Cir. 2003) ("Whether counsel's decision is tactical is a question of fact[.]").  Given these findings and in light of the record, ample justification existed for the First DCA to deny petitioner's claims.

Courts are required to view trial counsel's conduct from his perspective at the time. *Strickland*, 466 U.S. at 689; *Waters v. Thomas*, 46 F.3d 1506, 1514 (11th Cir. 1995) ("The widespread use of the tactic of attacking trial counsel by showing what 'might have been' proves that nothing is clearer than hindsight – except perhaps the rule that we will not judge trial counsel's performance through hindsight."). Attorney Been adopted his particular defense strategy because he knew petitioner wanted to avoid a PRR sentence, and also knew the State had overwhelming evidence of all but the second element of robbery.  Mr. Kasem would unequivocally identify petitioner as the man who took the money.   Mr. Al-Foqahaa would unequivocally identify petitioner as the man who struggled with Mr. Kasem and Mr. Jaber outside the store and who then abandoned the money and fled.  Officer Osborn would describe how he located petitioner within two blocks of the store, moments after the robbery, with a ripped shirt, upon Mr. Al-Foqahaa pointing out petitioner as the perpetrator.  Petitioner conceded to the state postconviction court that the only element arguably in dispute was the second element (force, violence, or putting in fear).  (Ex. I, p. 255).  Attorney Been reasonably adopted a strategy of attempting to persuade the jury that there was reasonable doubt on the force/putting in fear element and that they should convict petitioner merely of felony theft, which would avoid the PRR enhancement.  *See Richter*, 562 U.S. at 111 ("When defense counsel does

not have a solid case, the best strategy can be to say that there is too much doubt about the State's theory for a jury to convict.").

Attorney Been's strategic decision to incorporate evidence of the surveillance video into the defense was reasonable as well.  Officer Osborn described the video during his deposition testimony.  Based on Osborn's description. counsel determined that although the video was inculpatory in that it showed petitioner taking the money, it was arguably exculpatory in that it tended to prove theft, but fell short of robbery.  Counsel determined that evidence of the video could corroborate petitioner's version of the story that he used no force, violence or threats in the course of taking the money.  Because there was no video, however, Attorney Been made a reasonable strategic decision to allow Officer Osborn to testify to its contents, based on how Osborn described the video during his deposition.  When Osborn deviated from his deposition testimony, Attorney Been confronted Osborn with his deposition testimony, which allowed the jury to hear the more defense-favorable version of the video.  (*See* Ex. B, pp. 98-106).  Contrary to petitioner's assertion that Attorney Been assured him that evidence of the video would not come in, such evidence was a critical part of the defense strategy from the beginning.  The First DCA reasonably could have concluded that counsel's decision to allow evidence of the video was not deficient, that counsel did not advise petitioner that evidence of the video would not

come in, and that petitioner's decision to reject the State's plea offer was not influenced by misadvice concerning the video, but by petitioner's unwillingness to accept the State's plea terms.

The state circuit court's reasoning provides a reasonable basis upon which the First DCA could have denied relief. Petitioner is not entitled to habeas relief on Ground One or Two.

Ground Three  "Defense counsel rendered ineffective assistance by leading Walker to believe that he only had to defend against the element of 'force' to be acquitted of robbery, which led Walker to refuse the State's plea offer and proceed to trial". (Doc. 1, p. 31).

Petitioner alleges counsel misadvised him about the second element of robbery by telling him he could be convicted of robbery only if the State proved he used force in the course of taking the money, and by failing to tell him that the element could be satisfied if there was evidence that he merely put the victim in fear. Petitioner asserts that had he known he could be convicted of robbery even in the absence of force, he would have accepted the State's plea offer. (Doc. 1, pp. 31-32). Respondent asserts that the state court's rejection of this claim is consistent with *Strickland*. (Doc. 12, pp. 5-6).

Petitioner raised this claim as Ground III of his Rule 3.850 motion. (Ex. H, pp. 6-7). The state circuit court denied relief as follows:

### Ground III

The Defendant alleges that counsel was ineffective by leading the Defendant to believe that he only had to defend against the element of "force" to be acquitted. Had he known that element 2 could also be proved by violence, assault or putting in fear, the Defendant alleges there is a reasonable probability that he would have accepted the State's plea offer instead of proceeding to trial.

First, there is no doubt that given his sentence, the Defendant has "buyer[']s remorse". There is also no doubt, that even if the Defendant knew the elements that he did not intend to accept the State's plea offer. According to the Defendant's theory, his best case scenario at trial was a "he said, he said" on the force issue[:] His testimony, which he now says he would not have testified, versus Kasem's testimony.

Second, Mr. Been testified that he could not remember the specific discussion with the Defendant on this issue and then went on to describe his general understanding of the elements of robbery versus theft. Despite Mr. Been's efforts to "fall on his sword", regarding this issue, Mr. Been is a quite experienced criminal defense attorney having handled capital cases. This fact is demonstrated by the fact that he employed a trial strategy to argue the lesser, felony theft, because he knew felony theft was not a "qualifying offense", for purposes of sentencing the Defendant as a prison release reoffender.

Third, there is no evidence that the Defendant's prior attorney [Attorney Thomas] failed to advise him of the elements of a robbery.

Fourth, the information filed by the State sets forth the elements of robbery.

Fifth, the entire trial centered around who grabbed who by the arm. If counsel in fact failed to so advise the Defendant, counsel was deficient. Assuming counsel was deficient, the Defendant must still establish prejudice. The jury found the Defendant guilty of robbery. Beyond that, there is no way to determine if they decided guilt because force was used or violence, or assault o[r] putting in fear. More

importantly, the Defendant's argument as to prejudice defies logic as previously set forth, as the evidence shows he could not have accepted the plea[ ] as offered by the State.  Ground III is DENIED.

(Ex. H, pp. 32-33).  The First DCA summarily affirmed.  (Ex. L).

Several reasonable bases appear for the First DCA to deny relief.  One such basis is that, as a fact matter, petitioner failed to establish he was misadvised or inadequately advised concerning all the alternatives for satisfying the second element of robbery.  Attorney Been testified that the defense theory, which petitioner understood and agreed to, was that "this was a theft accomplished without force or threat or anything like that."  (Ex. I, p. 284).  Also, as noted by the state circuit court, the charging documents explicitly put petitioner on notice that even if he hadn't used force, he could be found guilty of robbery if he put the victim in fear.  (Ex. A, pp. 6, 7).  As also noted by the circuit court, petitioner did not allege that his original attorney Ronald Thomas, who represented petitioner for 8 months, did not inform him of the four alternative means of satisfying the second element.

Petitioner also failed to establish a substantial likelihood that he and the State would have come to terms on a plea agreement.  Even petitioner's postconviction evidentiary hearing testimony failed to demonstrate a reasonable probability he and the State would have resolved the case by a plea deal:

Q [Mr. Stevenson, petitioner's postconviction counsel]:  What kind of plea offer were you given in this case?

A [Petitioner]:  Five years.

Q  If you pled to the robbery you would get five years in prison?

A (Nonverbal response.)

    MS. RAY [Prosecutor]:  I didn't hear his answer.

    THE WITNESS:  Yes, sir.

BY MR. STEVENSON:

Q  Okay.  Did you consider taking that offer anyway?

A  Well, I would have took the five years but not for a robbery.

(Ex. I, pp. 249-250).  Combined with Attorney Been's testimony of petitioner's unwillingness to agree to a 5-year, PRR sentence for attempted robbery, which were the only terms the State was willing to accept, (Ex. I, p. 302), the First DCA reasonably could have rejected petitioner's claim for failure to establish prejudice.

The First DCA's rejection of Ground Three was not contrary to, and did not involve an unreasonable application of, the *Strickland* standard.  Nor was the decision based on an unreasonable determination of the facts.  Petitioner is not entitled to federal habeas relief on Ground Three.

Ground Four          "Defense counsel rendered ineffective assistance by failure to properly advise Walker that he only had to admit to one prior misdemeanor rather than nine".  (Doc. 1, p. 33).

Petitioner alleges counsel misadvised him about the number of prior misdemeanor convictions he should admit during cross-examination by the State. Petitioner alleges that he had only one prior conviction for a misdemeanor crime of dishonesty, because the remaining eight did not involve adjudications of guilt.  (Doc. 1, pp. 33-34).  Petitioner asserts there is a reasonable probability he would have been acquitted had he testified on cross that he had only one misdemeanor crime of dishonesty instead of nine.  (*Id.*, p. 34).  Respondent asserts that the state court's rejection of this claim is consistent with *Strickland*.  (Doc. 12, p. 6).

Petitioner raised this claim as Ground IV of his Rule 3.850 motion.  (Ex. H, pp. 7-8).  The state circuit court denied relief as follows:

**Ground IV**

The Defendant alleges ineffective assistance of counsel because Mr. Been advised him to admit to nine prior misdemeanor crimes of dishonesty instead of one.  Counsel was not deficient.  The State produced the documents to defense counsel.  There was a question as to an adjudication of guilt as to eight of them.  They took a break to check on them in the computer system.  Mr. Been testified that if there was no proof of an adjudication he would have objected.  Mr. Been properly advised the Defendant.  Further, the Defendant knew the answer before he ultimately testified in his own defense.  At hearing, the Defendant's testimony was obstructionist on cross examination. The Court finds the Defendant not credible.  The defendant has not established prejudice.  Ground IV is DENIED.

(Ex. H, p. 34).  The First DCA summarily affirmed.  (Ex. L).

The trial transcript and postconviction evidentiary hearing transcript amply support the state circuit court's findings.  (*See* Ex. B, pp. 112-113; Ex. I, pp. 237-330).  Petitioner utterly failed to demonstrate at the postconviction evidentiary hearing that at the time of trial he had been convicted of only one misdemeanor crime of dishonesty.  In fact, it is undisputed that petitioner was convicted of more than one such crime because his defense strategy was to persuade the jury to convict him of felony theft which required more than one prior petit theft.  *See State v. Page*, 449 So. 2d 813 (Fla. 1984) (petite theft is a crime of dishonesty).

Further, as the state circuit court recognized, during the trial the prosecutor produced documents to defense counsel and, when a question arose about whether all of them reflected adjudications of guilt, counsel and the prosecutor took a break to check them on the computer system.  Attorney Been testified at the postconviction evidentiary hearing that had the misdemeanor cases not resulted in convictions, he would not have conceded the conviction(s) and would have objected.  Attorney Been did not object.  (*See* Ex. I, pp. 291-295).   The state circuit court's order provides at least one reasonable basis on which the First DCA could have denied this claim.  Petitioner is not entitled to federal habeas relief on Ground Four.

Ground Five          "Defense counsel rendered ineffective assistance by failing to prevent introduction of Walker's prior convictions".  (Doc. 1, p. 35).

Petitioner faults trial counsel for conceding, and allowing the jury to hear evidence of, his two prior theft convictions.  Petitioner says he agreed to this strategy only because defense counsel advised him that the jury would hear the specifics of his prior crimes anyway, which was not true since petitioner admitted the number of priors.  Petitioner alleges he was prejudiced by the jury hearing of the two prior theft convictions, because there is a reasonable probability the jury improperly considered the convictions as evidence of proclivity.  (Ex. I, pp. 318-319).  Respondent asserts that the state court's rejection of this claim is consistent with *Strickland*.  (Doc. 12, pp. 6-7).

Petitioner raised this claim as Ground V of his Rule 3.850 motion.  (Ex. H, pp. 9-10).  The state circuit court denied relief as follows:

**Ground V**

The Defendant alleges ineffective assistance of counsel because the Defendant agreed to admitting his two prior theft convictions.  The Defendant specifically agreed with this trial strategy to get the permissive lesser of felony theft.  *Exhibit 2, p.* 5.  This was a reasonable trial strategy, especially considering his PRR status.  Mr. Been was not deficient.  The Defendant has not established prejudice.  Ground V is DENIED.

(Ex. H, pp. 34-35).  The First DCA summarily affirmed.  (Ex. L).

The state circuit court's order provides at least one reasonable basis on which the First DCA could have rejected petitioner's claim.   Attorney Been made a reasonable strategic decision, with which petitioner agreed, to portray petitioner as a non-violent thief by allowing evidence of his prior theft convictions and admitting he stole the money in this case, in the hope of avoiding a robbery conviction and more onerous PRR sentence in favor of a non-PRR-qualifying felony theft conviction.   There is a reasonable argument that counsel satisfied *Strickland*'s deferential standard.  Petitioner also has not shown there is substantial likelihood the outcome of his trial would have been different had evidence of his prior thefts been excluded.   Because fairminded jurists can concur in the First DCA's rejection of Ground Five, petitioner is not entitled to federal habeas relief.

Ground Six        "Defense counsel rendered ineffective assistance by failing to move for a limiting instructing [sic] at the time Walker's prior convictions were entered into evidence".  (Doc. 1, p. 36).

Petitioner faults defense counsel for failing to request a limiting instruction on the jury's consideration of his prior convictions.  Petitioner argues he was prejudiced because "[h]ad it not been for counsel's deficient performance there exists a reasonable probability that the outcome of the trial would have resulted in the jury being properly instructed, not using Walker's priors as evidence of bad character or propensity, resulting in an acquittal, or the issue would have been preserved for

appellate review." (Doc. 1, p. 37). Respondent asserts that the state court's rejection of this claim is consistent with *Strickland*. (Doc. 12, p. 7).

Petitioner raised this claim as Ground VI of his Rule 3.850 motion. (Ex. H, pp. 10-11). The state circuit court denied relief as follows:

**Ground VI**

The Defendant alleges ineffective assistance of counsel because Mr. Been failed to move for a limiting instruction on prior convictions. Defense counsel did ask for a limiting instruction *Exhibit 2, pp 8-10*. While counsel probably should have reminded the Court later, any deficiency in that regard was cured because the instruction was included on pages 5 and 6 of the jury instructions. *Exhibit 3*. Even if the Defendant established ineffective assistance of counsel, he failed to establish prejudice. Ground VI is DENIED.

(Ex. H, p. 35). The First DCA summarily affirmed. (Ex. L).

The record establishes that petitioner's jury was properly instructed with the precise provision petitioner proposes. The relevant instruction reads: "The evidence you received that the defendant has been convicted of some crimes, felonies and misdemeanors, involving dishonesty or false statement, should be considered by you only in weighing the credibility of the defendant's testimony and for enhancement purposes and not for any other purpose." (Ex. I, pp. 226-227) (emphasis added). Because fairminded jurists can concur in the First DCA's rejection of Ground Six, petitioner is not entitled to federal habeas relief.

Ground Seven        "Defense counsel rendered ineffective assistance by failing to
                    object to the State using Walker's prior inconsistent statement as
                    substantive evidence of guilt".  (Doc. 1, p. 38).

Petitioner alleges that during his trial testimony, he was impeached with prior

inconsistent statements.  (Doc. 1, p. 38 (citing trial transcripts at pp. 116, 121, 123,

124, 129)).  Petitioner asserts that during closing argument, the prosecutor relied on

his inconsistent statements as substantive evidence of guilt.  (*Id.* (citing trial

transcript at pp. 154, 167)).  Petitioner faults defense counsel for failing to object to

the closing argument.  Petitioner attempts to satisfy *Strickland*'s prejudice prong by

making the conclusory statement:  "Had it not been for counsel's performance, there

exists a reasonable probability that the outcome of the trial would have resulted in

an acquittal, or the issue would have been preserved for appellate review."  (Doc. 1,

p. 38).  Petitioner alleges no specific facts to support his conclusion.  Respondent

asserts that the state court's rejection of this claim is consistent with *Strickland*.

(Doc. 12, pp. 7-9).

Petitioner raised this claim as Ground VII of his Rule 3.850 motion.  (Ex. H,

pp. 11-12).  The state circuit denied relief as follows:

**Ground VII**

The Defendant alleges ineffective assistance of counsel because
Mr. Been failed to object to the State using Walker's prior inconsistent
statements to establish substantive guilt.  In his motion, the Defendant
cites to *Exhibit 2, pp. 154, 167*.  At the hearing, he complained that he

was improperly impeached with a police Maverick video that he had
never seen.  He testified that he did not know about the video and was
taken by surprise.  The State did not argue the prior inconsistent
statements as substantive evidence in closing arguments.  More
importantly, the Maverick video was discussed at the beginning of the
trial.  *Exhibit 2, pp. 11-12*.  The Defendant knew he made statements to
Officer Osborn post Miranda.  There is no entitlement to have a
transcript or otherwise review the Maverick prior to his testimony.
Counsel was not deficient in failing to object.  Even if he was, the
Defendant was not prejudiced.  Ground VII is DENIED.

(Ex. H, p. 35).  The First DCA summarily affirmed.  (Ex. L).

Reviewing page 154 of the trial transcript, the prosecutor did not use

petitioner's prior inconsistent statements as substantive evidence of guilt, but rather

as relevant to assessing his credibility.   The prosecutor argued that petitioner

admitted to the jurors he was a liar, yet he nonetheless wanted them to "believe what

he is saying today."  (Ex. B, p. 154).  The prosecutor then argued that petitioner

made a tactical decision to admit guilt of theft to draw the jury away from robbery

and its more severe sentence.  (*Id*., pp. 154-155).  The prosecutor's arguments were

not improper, and counsel had no basis to object.  The same is true of page 167 of

the transcript.  The prosecutor urged the jury to find that petitioner was not a credible

witness.   (*Id*., p. 167).   The record conclusively refutes the factual basis of

petitioner's claim.

The First DCA's rejection of Ground Seven was not contrary to, and did not

involve an unreasonable application of, the *Strickland* standard.   Nor was the

decision based on an unreasonable determination of the facts.  Petitioner is not entitled to federal habeas relief on Ground Seven.

Ground Eight          "Defense counsel rendered ineffective assistance by failure to move for a limited [sic] instruction on the use of prior inconsistent statements".  (Doc. 1, p. 39).

Petitioner relies on the facts alleged in Ground Seven to argue that defense counsel was ineffective for "failing to move the Court for a limiting instruction on the use of prior inconsistent statements.  Specifically, the jury should have been instructed that prior inconsistent statements were to be used for impeachment/credibility purposes only, not to prove that one statement is a lie and the other is truth and definitely not be used as substantive evidence of guilt."  (Doc. 1, p. 39).  Petitioner makes a conclusory statement, with no specific facts supporting it, that had counsel requested petitioner's proposed instruction there is a reasonable probability he would have been acquitted.  Respondent asserts that the state court's rejection of this claim is consistent with *Strickland*.  (Doc. 12, pp. 7-9).

Petitioner raised this claim as Ground VIII of his Rule 3.850 motion.  (Ex. H, pp. 12-13).  The state circuit denied relief as follows:

**Ground VIII**

The Defendant alleges ineffective assistance of counsel because Mr. Been failed to[ ] move for a limiting instruction on the use of prior inconsistent statements.  At hearing, the defendant again cited to the State's closing argument.  The Jury Instructions speak[ ] to how the jury

is to treat prior inconsistent statements.  There is no evidence that any inconsistent statements were used as substantive evidence.  The State's argument was not objectionable.  Counsel's failure to object was not deficient.  The Defendant has not suffered prejudice.  Ground VIII is DENIED.

(Ex. H, pp. 35-36).  The First DCA summarily affirmed.  (Ex. L).

The jury instructions included a provision that a witness' prior inconsistent statements should be considered in determining that witness' credibility.  (Ex. I, p. 226).  As to petitioner in particular, the jury was instructed that they "should apply the same rules to consideration of [petitioner's] testimony that you apply to the testimony of the other witnesses."  (*Id.*, p. 227).  Nothing in the record suggests that the jury was urged to, or did, consider petitioner's prior inconsistent statements for any other purpose than as instructed – determining his credibility.  As fairminded jurists can concur in the state court's determination that petitioner failed to establish deficient performance and prejudice with regard to counsel's failure to request a limiting instruction on the use of prior inconsistent statements, petitioner is not entitled to federal habeas relief on Ground Eight.

Ground Nine          "Defense counsel rendered ineffective assistance by failing to object to evidence of other witnesses on confrontation grounds". (Doc. 1, p. 40).

Petitioner alleges the following to support this claim:

During trial the State presented testimony from the victims that established that there were other witnesses present in the store when the

crime occurred (T.T. 33, 83, 84).  Then Officer Osborn came in and testified that he gathered evidence in this case through victim statements, and by interviewing other witnesses (T.T. 101, 104, 107, 110, 111).

Officer Osborn's testimony led the jury to believe that there was outside or what [sic] was presented at trial to establish Walker's guilt. This was highly improper and should have been objected to by defense counsel.

(Doc, 1, p. 40).  Petitioner asserts he was prejudiced because counsel's failure to object denied him his right of confrontation, and that "there exists a reasonable probability that the outcome of the trial would have resulted in an acquittal" had counsel objected.  (*Id.*).  Respondent asserts that the state court's rejection of this claim is consistent with *Strickland*.  (Doc. 12, pp. 9-10).

Petitioner raised this claim as Ground IX of his Rule 3.850 motion.  (Ex. H, pp. 13-14).  The state circuit court denied relief as follows:

**Ground IX**

The Defendant alleges ineffective assistance of counsel because Mr. Been failed to object to evidence of other witnesses on confrontation grounds.  He cites *Exhibit 2, pp. 33, 83, 84, 101, 104, 107, 110, 111*.  This claim is without merit and therefore Ground IX is DENIED.

(Ex. H, p. 36).  The First DCA summarily affirmed.  (Ex. L).

The court has reviewed the trial testimony petitioner cites.  Counsel was not deficient for failing to object, because counsel had no valid hearsay or other

confrontation-based objection, with the exception of Osborn's testimony describing the surveillance video.  As the court found previously, counsel's decision to allow (and in fact elicit) Osborn's testimony concerning the surveillance video was part of counsel's reasonable trial strategy.  *See supra* Grounds One and Two.  The First DCA had a reasonable basis to decide that counsel was not ineffective for failing to raise non-meritorious objections or for pursuing a reasonable defense strategy. *Insignares v. Sec'y, Fla. Dep't of Corr.*, 755 F.3d 1273, 1284 (11th Cir. 2014) (*citing Chandler v. Moore*, 240 F.3d 907 (11th Cir. 2001) (concluding that counsel was not ineffective for failing to raise a non-meritorious objection)).  Petitioner is not entitled to habeas relief on Ground Nine.

Ground Ten          "Defense counsel rendered ineffective assistance by failing to object to comments on Walker's right to remain silent".  (Doc. 1, p. 41).

This ground involves Officer Osborn's trial testimony concerning statements petitioner made after he was arrested, read his *Miranda*[4] rights, affirmed his understanding of those rights, voluntarily waived them and answered Osborn's questions.  (*See* Ex. B, p. 92).  Osborn testified:

Q  [Prosecutor]  . . . [D]id you ask him what happened to his shirt?

A  [Officer Osborn]  I did ask him about his shirt.

_____

[4] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Q  What did he tell you happened to his shirt?

A  He indicated that he had been involved in an argument with another male.  And when I continued to ask further, he said he had been jumped by the male, **but gave very few details about the incident itself**.

Q  Okay.  So, is it fair to say that he attributed the tearing of his shirt to a male that he had indicated had jumped him?

A  That is correct.

Q  Okay.  With respect to the robbery, what did you say to him about the robbery, if anything?

A  I confronted him with the fact that he had been accused of being at the Time Saver and stealing money and he denied being at the Time Saver, other than saying he had been there earlier.  He kept saying earlier, **but wouldn't give a time frame of when he was there**.

(Ex. B, pp. 92-93) (emphasis added to indicate statements petitioner contends should

have been excluded as comments on his right to remain silent).  Petitioner asserts

that the bolded testimony "is fairly susceptible of being interpreted as comment on

Walker's right to remain silent when considering that Walker's failure to give

'details' or a 'time frame' was when Walker had decided to invoke his right to

remain silent and not answer anymore questions." (Doc. 1, p. 41).  Petitioner claims

defense counsel was ineffective for failing to object.  (*Id*.).  Respondent asserts that

the state court's rejection of this claim is consistent with *Strickland*.  (Doc. 12, pp.

10-11).

Petitioner raised this claim as Ground X of his Rule 3.850 motion.  (Ex. H, pp. 14-15).  The state circuit court denied relief, explaining:  "First the Defendant made these statements post Miranda.  He did not thereafter invoke his right to remain silent.  Mr. Been was not deficient and the Defendant was not prejudiced.  Ground X is DENIED."  (Ex. H, p. 37).  The First DCA summarily affirmed.  (Ex. L).

A suspect has not invoked the *Miranda* right to remain silent unless he does so "unambiguously".  *Berghuis v. Thompkins*, 560 U.S. 370, 381-382, 130 S. Ct. 2250, 176 L. Ed. 2d 1098 (2010).  Petitioner does not assert, nor does the record remotely suggest, that prior to petitioner's making his statements, he told Osborn he wanted to remain silent or did not want to talk with police.  Petitioner's providing vague responses to Osborn's questions did not unambiguously invoke his right to remain silent such that Osborn was prevented from testifying about petitioner's answers.  *See, e.g.*, *Berghuis* at 381-382 (holding that suspect did not invoke his right to remain silent by "not saying anything" for a period of time; "Thompkins did not say that he wanted to remain silent or that he did not want to talk with the police.  Had he made either of these simple, unambiguous statements, he would have invoked his 'right to cut off questioning.'" (*citing Michigan v. Mosley*, 423 U.S. 96, 103, 96 S. Ct. 321, 46 L. Ed. 2d 313 (1975))).  Merely giving an incomplete response to a question posed by law enforcement does not rise to invocation of the right to

remain silent.  Counsel was not ineffective for failing to make a meritless objection.

*Chandler, supra*.  Petitioner is not entitled to federal habeas relief on Ground Ten.

Ground Eleven      <u>"Defense counsel rendered in [sic] assistance when considering this cumulative effect of counsel's deficient performance and prejudice rendered therein"</u>.  (Doc. 1, p. 42).

Petitioner asserts that two or more of his foregoing claims (he does not identify which ones) establish deficient performance and prejudice under *Strickland*, "[t]hereby establishing a cumulative effect claim."  (Doc. 1, p. 42).  Respondent asserts that petitioner's claim is so conclusory that it fails to state a claim upon which relief can be granted.  (Doc. 12, pp. 11-12).  Respondent argues in the alternative that because there was no deficient performance by counsel and no prejudice from any of petitioner's individual claims, there is nothing to accumulate into a separate claim of ineffective assistance.  (*Id*., pp. 12-13).  Respondent also contends that because the United States Supreme Court has not recognized a claim of cumulative error, the state court's rejection of petitioner's cumulative effect claim cannot be contrary to or involve an unreasonable application of clearly established federal law. (*Id*., pp. 13-14).

Petitioner raised this claim as Ground XI of his Rule 3.850 motion.  (Ex. H, p. 15).   The state circuit court denied relief as follows:  "Finally, the Defendant alleges that the cumulative effect of all of Mr. [B]een's deficiencies resulted in

prejudice warranting a new trial.  For all of the reasons stated above, the Defendant has not established prejudice.  Ground XI is DENIED."  (Ex. H, p. 37).  The First DCA summarily affirmed.  (Ex. L).

"The Supreme Court has not directly addressed the applicability of the cumulative error doctrine in the context of an ineffective assistance of counsel claim."  *Forrest v. Fla. Dep't of Corr.*, 342 F. App'x 560, 564 (11th Cir. 2009).  Given the absence of Supreme Court precedent applying the cumulative error doctrine to claims of ineffective assistance of counsel, and the fact that none of petitioner's individual claims have merit, this court cannot say that the First DCA's rejection of petitioner's claim is contrary to or an unreasonable application of clearly established federal law.  *See Wright v. Van Patten*, 552 U.S. 120, 126, 128 S. Ct. 743, 169 L. Ed. 2d 583 (2008) ("Because our cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established federal law."); *Schriro v. Landrigan*, 550 U.S. 465, 478, 127 S. Ct. 1933, 167 L. Ed. 2d 836 (2007) (The Arizona Supreme Court did not unreasonably apply federal law because "we have never addressed a situation like this."); *Reese v. Sec'y, Fla. Dep't of Corr.*, 675 F.3d 1277, 1287-88 (11th Cir. 2012) ("The Supreme Court has reiterated, time and again, that, in the absence of a clear answer – that is, a holding by the Supreme Court –

about an issue of federal law, we cannot say that a decision of a state court about that unsettled issue was an unreasonable application of clearly established federal law."); *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012) (declining to decide whether, under the current state of Supreme Court precedent, cumulative error claims reviewed through the lens of AEDPA can ever succeed in showing that the state court's decision on the merits was contrary to or an unreasonable application of clearly established law, but concluding that there can be no cumulative error where there is no error found in the trial court's rulings). Petitioner is not entitled to federal habeas relief on his "cumulative effect" claim.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473,

483-84, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted).   Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.   That the petition for writ of habeas corpus (doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Lorenzo Walker*, Leon County Circuit Court Case No. 09-CF-2275, be DENIED.

2.   That the clerk be directed to close the file.

3.   That a certificate of appealability be DENIED.

At Pensacola, Florida this 1st day of March, 2017.


*/s/* *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon the magistrate judge and all other parties. A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.